(22 App. Div. 16.)

In re HATCH et al.

(Supreme Court, Appellate Division, First Department. November 12, 1897.)

ASSIGNMENT FOR BENEFIT OF CREDITORS—RIGHT OF SET-OFF.
  In case of an assignment for the benefit of creditors, the right of a creditor to have an indebtedness from himself to the assignor set off against his own claim upon the estate must exist at the time of the assignment, and cannot operate where the claim against the creditor comes into existence after the making of the assignment.

Appeal from special term.

In the matter of the general assignment of Alfrederick S. Hatch and Frederick H. Hatch, individually, and as partners composing the firm

of A. S. Hatch & Co. From an order affirming the report of a referee, establishing claims against the assigned estate, and granting an extra allowance of costs, the assignee appeals. Modified.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

George C. Lay and Thomas P. Wickes, for appellant.

Frederic R. Coudert, for respondent.

WILLIAMS, J. The assignment was made November 14, 1897, by A. S. Hatch and F. H. Hatch, composing the firm of A. S. Hatch & Co., to H. H. Chittenden, of the individual and firm property of the assignors. At the time of the assignment, Huntington had a claim against the individual estate of A. S. Hatch of $17,389.22, and one against the firm estate of $20,167.49. He held collateral security for these claims, and both claims were due and payable. There seems to be no serious dispute now as to the amount of these claims, and the right of Huntington to the benefit of the collateral securities. The assignee has a claim in behalf of the individual estate of A. S. Hatch against Huntington, which he insists he is entitled to have paid to him, but which Huntington insists he is entitled to have applied in payment of his claim against such individual estate, to the extent of the latter claim. There is a dispute, also, as to the amount of the claim by the estate against Huntington. The referee reported in favor of Huntington, and found the amount of his claim at the date of his report, including interest, to be $19,368. The claim against Huntington, with interest to the same time, amounted to $25,973.16, and the balance therefore due the estate was $6,605.16. This claim against Huntington arose out of the following facts: December 21, 1885, A. S. Hatch and Harvey Fiske, composing the firm of Fiske & Hatch, recovered a judgment against Henry G. Attrill and William K. Soutter for $163,695.31; and thereafter, and before June 24, 1886, A. S. Hatch became the sole owner of this judgment. June 15, 1886, Huntington also recovered a judgment against the same Attrill and Soutter for $100,240.03. Hatch and Huntington on June 24, 1886, entered into a written contract, mutually agreeing that all benefits, advantages, and things of value which should be derived from their two judgments should be divided between them pro rata, in proportion, substantially, to the amount of their respective judgments,— Hatch 163-263, and Huntington 100-263. This was about one year and five months before the assignment was made. Proceedings were thereafter taken under the two judgments to reach the property of the judgment debtor, and were continued during several years, Messrs. Tweed and Evarts having general charge of the same. Under the Hatch judgment, real property at Rockaway Beach, Long Island, N. Y., claimed to belong to the judgment debtor, was sold on execution, and was bid in by one Parkin for about the amount of the judgment and sheriff's fees and expenses, and was for a time held by him for the parties, and then, at their request, transferred to one Gates, who has since held it for the parties in interest. Litigation arose after such sale as to the title, which has been conducted by Tweed and Evarts,

and which has involved considerable expense, and Huntington has
paid this expense and taxes, etc. He is also liable for the services of
Messrs. Tweed and Evarts with reference to this property. Under the
Huntington judgment, efforts were made to reach the property of the
judgment debtor outside the state of New York,—in New Orleans, Bal-
timore, and Canada; and large expenses were necessarily incurred
and paid in the conduct of the litigation with reference to such prop·
erty, which Huntington paid, and he is also liable for the services of
Tweed and Evarts with reference to this property. These efforts re-
sulted at last, some years after the assignment was made, in recover-
ing considerable property. The referee took an accounting as to this
property, and the expenses incurred in recovering the same, and the
expenses incurred with reference to the Rockaway Beach property,
and compensation for the services of Messrs. Tweed and Evarts in
both matters; and after deducting all the expenses incurred, and al-
lowing $15,000 for the services of Messrs. Tweed and Evarts, the
referee found the amount to which the Hatch estate was entitled, as
already stated. The court approved of that finding by the referee.

The serious question raised upon this appeal is whether Huntington
is entitled to have the amount found due the Hatch estate applied
upon his claim against the estate, by way of offset or otherwise. The
referee very properly held that there was no proof of any agreement
between Hatch and Huntington that any moneys recovered by the
latter under his judgment should be held by him as collateral security
for, or as an offset to, the indebtedness of Hatch or Hatch & Co. to
him. The only question is whether, regardless of any express agree-
ment between the parties, offset can be allowed under any well-
settled principles of equity. The facts are undisputed. The debt
owing by the insolvent assignor to Huntington was due and payable
at the time the assignment was made. There was then no debt ow-
ing by Huntington to the assignor, either due or to become due. There
was the existing contract of June 24, 1886, under which, several years
afterwards, Huntington became liable to account for the assignor's
proportionate share of property of the judgment debtor Attrill, re-
covered by Huntington by proceedings under his judgment instituted
before the time the assignment was made. At the time Huntington
so became liable to account, the assignee's accounts had not been
closed, and the estate had not been fully administered and the assets
distributed. The question does not arise, however, between Hatch
and Huntington, but between Hatch's creditors and Huntington.
Equity goes upon fixed principles, and does not allow a set-off unless
there is a recognized principle of equity that requires it. Hatch v.
Mayor, etc., 82 N. Y. 436. By an assignment in trust for the assign-
or's creditors, what equities previously existed become suspended by
an intervention of the rights of other creditors. Equity requires the
offset of cross demands where, from the situation of the parties, cross
actions at law are inadequate, and the insolvency of one of the parties
presents ordinarily a case for equitable interference; but this rule is
limited in its application to cases where the equitable rights of others
are not interfered with. In a case of an assignment for the benefit
of creditors, the right of set-off must exist at the time of the making

of the assignment. It cannot arise afterwards, for the reason that the claim in favor of the estate has passed to the assignee, and to allow a set-off would be to the prejudice of other creditors. Fera v. Wickham, 135 N. Y. 223, 31 N. E. 1028, and cases there cited. And so it is well settled that claims will be offset against each other when both were owing, due, and payable when the assignment was made, because the right to offset existed before the assignment was made, and no equities of creditors are interfered with. Such were the cases of Smith v. Felton, 43 N. Y. 419, and Richards v. La Tourette, 119 N. Y. 34, 23 N. E. 531. And the same is true where the claim against the assignor was due and payable when the assignment was made, although the claim against the creditor was not due and payable, because the creditor may waive the time of credit, and elect to regard his liability as due and payable at once, and the interests of creditors are in no way prejudiced. But when by the assignment the estate of the assignor has passed to an assignee in trust to hold for, and to distribute among, creditors, the former equity disappears in the superior equities vesting in the general body of creditors. They are then interested in having equality of distribution, and if a creditor, who, when the assignment was made, had no right to any offset, may be allowed it afterwards, he gains a preference. By the intervention of the rights of third persons under the assignment, the equities change with the change of the situation of the original parties, in accordance with equitable principles. Fera v. Wickham, above. It must be conceded in the present case that no right to offset existed at the time the assignment was made. Huntington owed no debt until years after the rights of general creditors had attached, and we are aware of no fixed or settled principles of equity that permit an offset under such a condition of things as appears here.

In view of the conclusion we have arrived at with reference to the allowance of the offset, it is unnecessary to examine the questions relating to the amount of the claim of the estate against Huntington. These questions could only become material if the right to set-off should be decided to exist. There seems to be no doubt as to the amount of the claim of Huntington against the estate. The order, so far as it fixes such amount, should be affirmed, and in all other respects reversed. The litigation has been solely on the allowance of the offset, and the amount of the claim of the estate against Huntington. No costs of the reference, or of the court below, or of this appeal, should therefore be allowed to the respondent.

VAN BRUNT, P. J., and O'BRIEN and INGRAHAM, JJ., concur.

PATTERSON, J. I concur in the conclusion that the claim of Huntington cannot be set off against the indebtedness to the assignee; but I think the referee was authorized, under the order, and the acquiescence of the assignee in the procedure, to determine what deduction, if any, should be allowed to Huntington for his expenses in collecting the claims against Attrill, and that there was sufficient proof to justify the allowance in full of the amount of the charges of Mr. Tweed and Mr. Evarts.