---

(110 App. Div. 670)

MICHIGAN SAVINGS BANK v. MILLER et al.

. (Supreme Court, Appellate Division, First Department. January 26, 1906.)

SET-OFF AND COUNTERCLAIM—ASSIGNED DEBTS—IMMATURED OBLIGATIONS.

> Code Civ. Proc. § 1909, provides that, where a claim or demand can be transferred, the transfer passes an interest which the transferee may enforce in his own name, the same as the transferror might have done, "subject to any defense or counterclaim existing against the transferror" before notice of the transfer, or against the transferee; and section 502, subd. 1, provides that, in an action on a contract other than a negotiable note or bill of exchange, a demand existing against the party thereto or an assignee of the contract at the time of the assignment thereof, and belonging to the defendant in good faith before notice of the assignment, must be allowed as a counterclaim. *Held* that, where plaintiff's assignor

of the claim sued on was indebted to defendant on a note which was not
due at the time of the assignment, such note was not available as a coun-
terclaim against plaintiff's right of action on the indebtedness assigned.

Action by the Michigan Savings Bank against George W. Miller
and another. On defendant's motion for a new trial on exceptions
ordered to be heard in the first instance at the Appellate Division. Ex-
ceptions overruled. Motion denied.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTER-
SON, LAUGHLIN, and HOUGHTON, JJ.

Benjamin F. Blair, for plaintiff.
T. M. Tyng, for defendants.

McLAUGHLIN, J. The appeal in this case comes before the court
on a motion for a new trial upon exceptions ordered to be here heard
in the first instance. There is no dispute as to the material facts in-
volved. On or about the 9th of April, 1904, the Detroit Sulphite
Fibre Company sold and delivered to the defendants goods at the
agreed price of $2,064.01 on a credit of two months. On the 11th of
April, 1904, the fibre company borrowed from the plaintiff $1,548,
and gave therefor its collateral promissory note payable on demand,
which contained the following statement:

"Having deposited with the Michigan Savings Bank of Detroit as collat-
eral security personal property as stated below, we hereby authorize the
sale of said personal property at public or private sale and with or without
notice on the nonperformance of this promise and we do hereby sell, assign,
transfer and set over to the Michigan Savings Bank the account as hereinbe-
low described. Account and draft. George W. Miller & Co. New York, N. Y.,
April 9. $2,064.01."

At the same time it delivered to the plaintiff a draft drawn by it
on the defendants for $2,064.01, dated April 9, 1904, payable two months
after date; also statement of the account, on which was written the
following:

"This account has been assigned to the Michigan Savings Bank, Detroit,
Michigan. Detroit Sulphite Fibre Company, A. G. Lindsay, Treasurer."

The draft at maturity was presented for, and payment demanded,
which was refused, and thereupon the plaintiff, as the assignee of the
sulphite company, brought this action to recover the amount of the
assigned claim.

The answer admitted that at the time stated the sulphite company
sold and delivered to the defendants the goods referred to in the com-
plaint, for which they agreed to pay the price there stated, and denied
its other material allegations. The answer also set up several affirma-
tive defenses, but no evidence was offered to support any of them,
except one—which the proof did establish—to the effect that on or
about the 25th of January, 1904, for a valuable consideration the sul-
phite company made and delivered to the defendants its certain prom-
issory note in writing, whereby three months after that date it prom-
ised and agreed to pay to the defendants the sum of $2,500 at the
First National Bank of Detroit, Mich. At the conclusion of the trial

both parties moved for the direction of a verdict. The defendants' motion was denied and plaintiff's granted, to which the defendants took an exception. This, and other exceptions taken, were, as already said, ordered to be here heard in the first instance.

The real question presented is whether the defendants had a right to offset, as against plaintiff's claim, the note for $2,500 of the sulphite company, and its determination depends upon the construction to be put upon section 1909 of the Code of Civil Procedure, which provides that, where a claim or demand can be transferred, the transfer thereof passes an interest, which the transferee may enforce by an action or special proceeding, or interpose as a defense or counterclaim in his own name, as the transferror might have done—

"Subject to any defense or counterclaim existing against the transferror, before notice of the transfer or against the transferee."

The plaintiff acquired its claim by assignment on the 11th of April, 1904. The note which defendants sought to offset against such claim did not fall due until the 28th of that month, and therefore on the day when the assignment was made it was not a claim then "existing," inasmuch as it could not then have been enforced. The words of the Code, "subject to any defense or counterclaim existing against the transferror," have reference to the time when the claim or demand is assigned or transferred. If the note had then been due, and could then have been enforced, the defendants could have offset the same, even though they did not own it at that time, but had acquired it subsequently and before notice of the assignment was given. The words "before notice of the transfer" do not mean that a claim may be offset if it were acquired after the assignment and before notice of it, unless such claim were due at the time of the assignment or transfer. Fera v. Wickham, 135 N. Y. 223, 31 N. E. 1028, 17 L. R. A. 456; Martin v. Kunzmuller, 37 N. Y. 396; Hamilton v. Piza, 6 App. Div. 598, 39 N. Y. Supp. 773. This is the general rule, and the section of the Code referred to is but an expression of it, that claims or demands sought to be set off must not only be mutual to the extent that they are owing by each to the other, but they must be due and payable; and therefore a claim not due cannot be set off against one which may be thereafter enforced. De Camp v. Thomson, 159 N. Y. 444, 54 N. E. 11, 70 Am. St. Rep. 570.

The view thus expressed as to the construction of section 1909 of the Code of Civil Procedure is strengthened, when that section is read in connection with section 502, which relates to counterclaims. It provides (subdivision 1) that if the action is founded upon a contract which has been assigned by the party thereto, other than a negotiable promissory note or bill of exchange, a demand existing against the party thereto or an assignee of the contract at the time of the assignment thereof, and belonging to the defendant in good faith before notice of the assignment, must be allowed as a counterclaim to the amount of the plaintiff's demand, if it might have been so allowed against the party or assignee while the contract belonged to him.

In thus construing section 1909 of the Code of Civil Procedure the authorities cited by the defendants have not been overlooked. An

examination of them will show they are not in point, or are distinguish-able from the question here under consideration. Other questions are raised by the defendants, but they do not seem to be of sufficient im-portance to require consideration.

It follows, therefore, that the defendants' exceptions must be over-ruled, and the motion for a new trial denied, with costs. All concur.