MINNA F. NEANDER, Respondent, *v.* JAMES A. TILLMAN, Appellant.

First Department, May 1, 1931.

*J. Sidney Bernstein* of counsel [*Carlton Z. Solomon* with him on the brief; *James A. Tillman*, attorney], for the appellant.

*Barnet Levy* of counsel [*Henri Pressprich*, attorney], for the respondent.

O'MALLEY, J. Plaintiff sues as assignee of Carl Neander, a resident of Berlin, for money had and received. The action is predicated upon an agency agreement whereby the defendant was to present the claim of Neander to the New York Life Insurance Company for the recovery of the proceeds of three policies of insurance issued to Neander, the proceeds of which were due him, payable in roubles. Defendant was to pay over to Neander such proceeds, less twenty-five per cent of the net amount for his services. In the event legal counsel was required, the defendant was to employ such and advance necessary disbursements.

The complaint charges that defendant surrendered the policies and collected $4,879.96, of which sum Neander was entitled to the net sum of $3,659.97. This sum defendant failed to pay after demand, and such sum is owing to Neander. The assignment o Neander's claim to plaintiff for value on July 31, 1930, is alleged; and also demand and failure to pay after assignment.

The answer, after denying the receipt of moneys on the specific policies, and also that plaintiff was an assignee for value, set forth two counterclaims. The first is predicated upon an alleged agreement between the defendant and Neander, whereby the latter was employed as the defendant's European agent to collect claims of residents of European countries, including Germany, Latvia and Esthonia, against American insurance companies upon a percentage basis. In connection with the agreement and Neander's performance thereof, defendant delivered to him confidential

information relating to the work and turned over to him valuable forms to assist him in collecting claims, which information and forms Neander agreed to keep secret and use only in defendant's service. Thereafter, Neander, with the aid of such information and forms, secured a large number of claims, but in violation of his agreement, turned them over to persons other than the defendant, to the latter's damage in the sum of $50,000.

The second counterclaim is predicated to some extent upon a breach by Neander of this same agency agreement. It alleges that Neander, as defendant's agent, introduced him to a German membership corporation or society for the purpose of securing the claims of its members against the New York Life Insurance Company and the Equitable Life Assurance Society, and that such society entered into an agreement with the defendant to deliver to him some 100 claims for collection. Thereafter Neander and the president of such society conspired to defraud the defendant of these claims for the purpose of delivering them to others and that by reason thereof the defendant was deprived of such claims and the fees that would have accrued to him therefrom to his damage in the sum of $50,000.

Both counterclaims were dismissed upon the ground that the agreement or agreements upon which they are predicated were illegal and void as contravening public policy. We are of opinion that these agreements *as alleged* may not be so readily condemned on a mere motion. It is fairly inferable that the claims to be solicited were sought for the purpose of settlement and adjustment, not necessarily for the sole purpose of instituting suits. We know of no principle of law or rule of public policy that prohibits one from soliciting, for the purpose of collection, claims which are just and which are due and payable, or may become so, to their owners. It is common knowledge that numerous collection agencies are regularly employed in business of this nature; yet no one could reasonably contend that such business is *per se* illegal and against public policy even though suits might ultimately be necessary.

While we are of opinion that the counterclaims as alleged are not illegal, against public policy, or void, we think, however, they were properly dismissed, for the reason that they do not allege specifically, nor is it fairly inferable therefrom, that the claims arising under the agreements pleaded, which are other than the agreements on which plaintiff's action is based, had matured so as to be capable of being the bases of independent actions against the plaintiff's assignor before the assignment to the plaintiff of the claim here sued upon. Unless such fact appears, the counterclaims are not properly pleadable under section 267, subdivision 1,

of the Civil Practice Act. (*Collens* v. *Philipsborn's, Inc.*, 209 App. Div. 483; *Golden* v. *Paskie & Co., Inc.*, 205 id. 610, 613.)

Herewith to be considered is a companion appeal by the defendant from an order granting plaintiff's motion for summary judgment and from the judgment entered thereon. (*Neander* v. *Tillman*, 232 App. Div. 192.) The order and judgment were made after the order striking out the defendant's counterclaim was made and entered. With these counterclaims eliminated we are clearly of opinion that the defendant had failed to establish his right to defend. Not only were the counterclaims insufficient as a matter of pleading but the opposing affidavit failed to set forth any facts entitling him to defend.

In view, therefore, of our affirmance of the order granting plaintiff's motion for summary judgment (*Neander* v. *Tillman, supra*), leave to plead anew will not be granted to this defendant, who may exercise his rights by way of independent actions.

It follows that the order should be affirmed, with ten dollars costs and disbursements.

FINCH, P. J., MERRELL, SHERMAN and TOWNLEY, JJ., concur.

Order affirmed, with ten dollars costs and disbursements.